IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
_____ DIVISION

RECEIVED
2005 DEC 19  P 4:13

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| _____Calvin Scott, Sr._____<br>_____(Blind Vendor)_____<br>_____<br>Plaintiff(s),<br><br>v.<br><br>_____James Buddy Swearengin_____<br>State of Alabama Dept. of Finance<br>_____<br>Defendant(s) | CIVIL ACTION NO.<br>2:05-CV-00651-MHT-CSC |
| _____Calvin Scott, Sr._____<br>_____(Blind Vendor)_____<br>_____<br>Plaintiff(s),<br><br>v.<br><br>___Ray Dennis, Perry Hopper, Ken Green___<br>State of Alabama Dept. of Rehabilitation Services<br>_Business Enterprise Program_____<br>Defendant(s) | CIVIL ACTION NO.<br>2:05-CV-652-F |

LEGAL BRIEF AS ORDERED BY THE HONORABLE JUDGE CHARLES S. COODY

_____

This case involves the violation of several federal and state laws specifically, Title I of the Americans with Disabilities Act (ADA), Title II, Title 504, and Alabama State Code 1975 §§ 21-1-40, 21-7-2, 21-7-5, 21-9-1, 21-9-6, 21-9-9, 795-7-2-04, 20 U. S. C. § 107 et. Seq.

1

## BACKGROUND

On January 31, 2005 I submitted the following three requests to my Blind Enterprise Program (BEP) representative Ken Green and Alabama Department of Rehabilitation Services (ADRS) Director Ray Dennis:

1. A permanent Electronic ID card/Swipe Key to allow me, the blind vendor, access to my vending machines

2. A designated parking space for me, the blind vendor, to safely load and unload vending machine stock

3. Removal/relocation of a snack machine to an area better suited for business for customers

All three of these requests were to be presented to the State of Alabama Department of Finance building manager James Buddy Swearengin, Jr. for approval and resolution.

After a meeting was held between Ken Green, Ray Dennis, and James "Buddy" Swearengin, Jr., the three simple requests I submitted resulted in me loosing my permanent position as a licensed blind vendor in the Alabama Business Enterprise program. The State of Alabama Department of Finance building manager, James Buddy Swearengin, Jr., along with Ken Green, and Ray Dennis conspired against me and concocted defamatory stories and events in order to justify firing me from my position as the blind vendor in the Gordon Person's state office building.

I was told that I nor my assistant was allowed back inside the Gordon Person's state office building and on February 24, 2005 I was fired and inventoried out of the B.E.P. for the Blind without any hearings nor a Full Evidentiary Hearing as required by state and federal laws 795-7-2-04, 20 U. S. C. § 107 et.

## DISCUSSION

Title I of the American with Disabilities Act (ADA) is a federal anti-discrimination statute designed to remove barriers which prevent qualified individuals with disabilities from enjoying the same employment opportunities that are available to persons without disabilities.

Like the Civil Rights Act of 1964 that prohibits discrimination on the bases of race, color, religion, national origin, and sex, the ADA seeks to ensure access to equal employment opportunities based on merit. It does not guarantee equal results, establish quotas, or require preferences favoring individuals with disabilities over those without disabilities.

However, while the Civil Rights Act of 1964 prohibits any consideration of personal characteristics such as race or national origin, the ADA necessarily takes a different approach. When an individual's disability creates a barrier to employment opportunities, the ADA requires employers to consider whether reasonable accommodation could remove the barrier.

2

The ADA thus establishes a process in which the employer must assess a disabled individual's ability to perform the essential functions of the specific job held or desired. While the ADA focuses on eradicating barriers, the ADA does not relieve a disabled employee or applicant from the obligation to perform the essential functions of the job. To the contrary, the ADA is intended to enable disabled persons to compete in the workplace based on the same performance standards and requirements that employers expect of persons who are not disabled.

However, where an individual's functional limitation impedes such job performance, an employer must take steps to reasonably accommodate, and thus help overcome the particular impediment, unless to do so would impose an undue hardship. Such accommodations may be adjustments to the way a job customarily is performed or to the work environment itself.

This process of identifying whether, and to what extent, a reasonable accommodation is required should be flexible, and should involve both the employer and the individual with a disability. No specific form of accommodation is guaranteed for all individuals with a particular disability. Rather, an accommodation must be tailored to match the needs of the disabled individual with the requirements of the job's essential functions.

Title II of the ADA requires that State and local governments give people with disabilities an equal opportunity to benefit from all of their programs, services, and activities (e.g. public education, employment, transportation, recreation, health care, social services, courts, voting, and town meetings).

State and local governments are required to follow specific architectural standards in the new construction and alteration of their buildings. They also must relocate programs or otherwise provide access in inaccessible older buildings, and communicate effectively with people who have hearing, vision, or speech disabilities. Public entities are not required to take actions that would result in undue financial and administrative burdens. They are required to make reasonable modifications to policies, practices, and procedures where necessary to avoid discrimination, unless they can demonstrate that doing so would fundamentally alter the nature of the service, program, or activity being provided.

So on January 31, 2005 when I submitted the following three requests to my Blind Enterprise Program (BEP) representative Ken Green and Alabama Department of Rehabilitation Services (ADRS) Director Ray Dennis:

- A permanent Electronic ID card/Swipe Key to allow me, the blind vendor, access to my vending machines
- A designated parking space for me, the blind vendor, to safely load and unload vending machine stock
- Removal/relocation of a snack machine to an area better suited for business for customers

I was merely asking for reasonable accommodations to be allowed access to areas where my snack machines are located, a safe area in the loading dock for me to load and unload my stock, and the relocation of a 200 pound snack machine that is too heavy for me to move on my own.

Alabama State Code 1975 §§ 21-1-40, 21-7-2, 21-7-5, 21-9-1, 21-9-6, 21-9-9, 795-7-2-04, 20 U. S. C. § 107 et. Seq. were also violated by the defendants.

For example, 795-7-2-.04ER  Removal from a BEP Facility, Suspension, or Termination of License: states that licenses are issued to vendors for an indefinite period. Licensees, temporary operators, and vendors are subject to removal, suspension, or termination. **Suspension or termination of a license shall occur only after affording the vendor an opportunity for a full evidentiary hearing.** If the vendor is dissatisfied with the full evidentiary hearing decision, he/she may request that a federal arbitration panel be convened by filing a complaint with the Secretary of the United States Department of Education.

However, I, the blind vendor, was terminated from the Blind Enterprise Program by ADRS Director Ray Dennis on February 24, 2005 without every being granted a full evidentiary hearing as required by State Law 795-7-2-.04ER.

To continue, James Buddy Swearengin, Jr also committed libel, slander, and defamation of character when he drafted a letter on State of Alabama letterhead containing the slanderous lies and defamed my character. This same slanderous letter was distributed to ADRS representatives and Director which they used to attempt to justify their actions of inventorying me out of the BEP program.

After I filed a complaint with the Office of Civil Rights they uncovered documentation dating back several years that clearly shows that this was not the first time the defendants had concocted the exact same false and defamatory allegations against me all in an effort to take my job.  The defendants in this case are repeat offenders and should be prosecuted to the full extent that the law allows.

Even though ADRS had clearly violated State Laws and their own processes and procedures detailed in the BEP manual by inventorying/removing me from the BEP, a full evidentiary hearing pursuant to the Randolph Sheppard Vending Act 20 U.S.C § 107 et seq was held on October 6, 2005 at the ADRS office located at 2129 East South Blvd, Montgomery, Alabama.

The ADRS Hearing Officer, Frank S. James III was told about all of the violations and was given documents in black and white fully supporting each of the violations. In reading his decision Frank S. James III failed to mention any of these violations. The hearing lasted five hours but Franks S. James III decision does not reflect what actually happened in the hearing. The defendants and their State appointed attorney's were stunned with the overwhelming amount of evidence/documentation I presented fully supporting my case. Against my documentation the defendants nor their attorney's had any defense. But you wouldn't know that from reading Frank S. James's III decision. Yet, Frank S. James, III rendered a decision in favor of the defendants when he failed to grant me the relief I requested.

CONCLUSION

Enclosed you will find documents that were presented during the hearing and given to ADRS Hearing Officer Frank S. James, III. You will find one document that clearly shows that ADRS Commissioner Steve Shivers also participated in my dismissal from the BEP program.

Additionally, I had written the US Office for Civil Rights, Congressman Mike Rodgers, President George Bush, Vice President Dick Cheney, Governor Bob Riley, State Representative Thad McClammy, and State Finance Director Jim Main. The response from writing all of these highly influential leaders is what forced the Dept of Finance to get me my job back in the ADRS BEP program. However, for nearly 30 days I was without any income to support my family and suffered tremendously due to the stress and depression caused by the defendants.

You will also find documentation dating back several years that was uncovered by the Office of Civil Rights that clearly shows that the defendants had tried the very same tactics all in an effort to take my job as a blind vendor.

All of the defendants in this case are repeat offenders/violators who have not been punished to date. I am asking the court to carefully review the enclosed documents fully supporting my case. I also ask the court to punish the defendants in this case to the fullest extent of the law and that I be awarded the relief that I requested at the hearing for each ADA and Alabama State Law violations as follows:
- $1 million from Ken Green
- $1 million from Ray Dennis
- $1 million from Perry Hopper
- $1 million from James Swearengin, Jr.

Sincerely,

Calvin Scott, Sr.   *Calvin Scott Sr.*

Sworn to before me this 19th
Day of December 2005

BENNY NEWTON
Notary Public, AL State at Large
My Comm. Expires Nov. 13, 2006

_____
NOTARY PUBLIC

Respectfully Submitted,

Calvin Scott, Sr.

5

___December 19, 2005_____  *Calvin Scott Sr.* (signature)
   Date                                   Plaintiff(s) Signature
                                        __1416 Marler Rd_____
                                       _Pike Road, Alabama 36064_____
                                       ___(334) 272-2657_____

6

Date: Dec. 19, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on this day Dec. 19, 2005, a copy of this BRIEF was mailed to council for defendants.

_Calvin Scott Sr._
Signature
Calvin Scott, Sr.