IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CALVIN SCOTT, SR., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CIVIL ACTION NO. |
| | * | CV-2:05cv651-F |
| JAMES (BUDDY0 SWEARENGIN, JR., | * | |
| | * | |
| Defendant. | * | |

| | | |
|---|---|---|
| CALVIN SCOTT, SR., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CIVIL ACTION NO. |
| | * | CV-2:05cv652-F |
| RAY DENNIS, et al., | * | |
| | * | |
| Defendants. | * | |

**DEFENDANTS' BRIEF CONCERNING
THE EFFECT OF THE DETERMINATION OF THE HEARING OFFICER**

Pursuant to this Court's order (doc. 14), the Defendants submit the following brief to address the effect of the hearing officer's determination on this matter.

**I.**

**STATEMENT OF THE PLAINTIFF'S CLAIMS**

The Plaintiff's claims, as he explained them to the Court at the status conference on September 20, 2005, (*see* doc. 12), and as he has described them in his Full Evidentiary Hearing Status Report (doc. 15), arise out of his participation in the blind vendor program run by the Alabama Department of Rehabilitation Services (ADRS) in accordance with The Randolph-Sheppard Act, 20 U.S.C. § 107, *et seq.* (the "Act").

During the time of the events related in his complaint, Mr. Scott was the blind vendor licensed by ADRS to operate a vending facility in the Gordon Persons Building, owned by the State of Alabama. Mr. Scott has sued the state's building manager, ADRS, and ADRS employees, alleging that they violated various state and federal laws in their implementation of the blind vendor program. Specifically, Mr. Scott complains that state and federal laws were violated when he was removed from (*i.e.*, "inventoried out of") the Gordon Persons vending facility without a prior full evidentiary hearing. (Doc. 15, p. 2)

## II.

## STATEMENT OF UNDISPUTED FACTS

In the course of the evidentiary hearing, the hearing officer confirmed, through dialogue with the Plaintiff and his wife, that there were four dates on which the Plaintiff claims his civil rights were violated by the Defendants. (T 54:4-8) Each of those four events relate to the Plaintiff's participation in the ADRS blind vending program.

The first event occurred on January 31, 2005, when the Plaintiff's electronic swipe key was taken away. (T 54:9-15) The second instance was a letter from Ray Dennis to the Plaintiff, dated February 9, 2005, raising concerns relating to the Plaintiff's operation of a vending facility at the Gordon Persons Building in Montgomery. (T 54:16-56:5; Exhibit 3) The third instance was a letter from Ray Dennis to the Plaintiff, dated February 14, 2005, instructing the Plaintiff not to continue to use his wife to assist him at the Gordon Persons Building. (T 57:1-19; Exhibit 6) The fourth instance was a letter from Ray Dennis to the Plaintiff, dated February 22, 2005, informing the Plaintiff that he would be removed from the vending facility at the Gordon Persons Building. (T 57:20-58:5; Exhibit 8)

In January 2005, the Plaintiff made three requests of his ADRS representative regarding his operation of the Gordon Persons vending facility: (1) that he be issued a permanent electronic "swipe" key to the Gordon Persons Building; (2) that a parking space at the Gordon Persons Building loading dock be designated "Blind Vendor;" and (3) that a snack machine be relocated. (Doc. 15, page 2) According to the Plaintiff, these three requests led to his wrongful removal from the Gordon Persons vending facility from February 24, 2005, to March 2, 2005. (Doc. 15, page 2; T-65:18-67:4)[1]

It is undisputed that on about February 7, 2005, the property manager of the Gordon Persons Building (Swearengin), wrote a letter requesting that the Plaintiff be removed from his position as the blind vendor servicing the Gordon Persons Building. (Exhibit 2) The Plaintiff and his wife contend that the Swearengin letter requesting his removal was prompted by the Plaintiff's three initial requests. (T-223:14-18) The Plaintiff and his wife also believe that the Defendant Swearengin was motivated by an incident between the Plaintiff's wife and the Defendant Swearengin's son at the Victoryland dog track[2] (T-100:12-101:2), as well as by a letter that the Plaintiff's wife wrote Mr. Swearengin in 1996 "to straighten him out." (T-101:3-14) The Plaintiff has no evidence to suggest that the Defendant Swearengin was motivated by any other factor. (T-101:15-102:6)

---

[1] References in this brief are made to the transcript of the evidentiary hearing by page and line ("T-page:line"), and to the exhibits offered by the Defendants at that hearing, both of which are filed as Addendum A to this brief.

[2] The dog track incident is described by Mrs. Scott in detail at pages 32-38 of the hearing transcript. In short, the incident did not involve a violation of federal law; rather, the incident stemmed from a dispute over $20 that the Defendant Swearengin's son borrowed from Mrs. Scott at the dog track in 2004, but refused to repay at the dog track in January 2005, when Mrs. Scott requested repayment.

When employees of ADRS received the letter, they consulted with Mr. Swearengin and were able to convince him to allow the Plaintiff to continue to operate his facility so long as the Plaintiff's wife did not accompany him in the performance of his duties. (T-122:1-8; 127:3-8; Exhibits 3 and 4) The Plaintiff refused to perform his duties without the assistance of his wife, however. (T-127:9-128:13) On February 22, 2005, ADRS, through Ray Dennis, wrote the Plaintiff to inform him that he would be removed from[3] the Gordon Persons Building. (Exhibit 8)

The Plaintiff's removal from the Gordon Persons Building never actually took place, however. (T-133:17-20) Instead, the Plaintiff and his wife wrote letters and consulted with state officials, including Mr. Swearengin's supervisors, and were able to convince them to change their minds and allow his wife to continue to assist him. (T:133:22-134:6; T-50:8-18) On March 2, 2005, ADRS wrote the Plaintiff to inform him that his wife had been approved to continue assisting him at the Gordon Persons Building. (Exhibit 11) On March 2, 2005, the Plaintiff resumed operation of the Gordon Persons vending facility, and all three of his original requests – a permanent swipe key, a designated parking place, and relocation of a snack machine – were granted. (T-50:8-51:2; T-66:17-23)

In February 2005, the Plaintiff had requested an administrative review, asserting that he was entitled to a full evidentiary hearing before being removed from the Gordon Persons vending facility. (Exhibit 5 and 7) After the Plaintiff was allowed to resume operation of the Gordon Persons vending facility with his wife assisting him, he wrote to

---

[3] According to the Plaintiff's wife, "removal from" a facility is synonymous with being "inventoried out of" a facility. (*See* T-63:20-22)

4

ADRS and cancelled the administrative review, scheduled for March 10, 2005. (Exhibit 12; T-50:8-51:2)

The administrative rules adopted by the Alabama Department of Rehabilitation Services and approved by the United States Department of Education, state, "Suspension or termination of a license shall occur only after affording the vendor an opportunity for a full evidentiary hearing." Administrative Code Rule 795-7-2-.04 (attached as addendum B). Thus, a hearing is required only as a prerequisite to a suspension or termination of a license, not as a prerequisite to removal from a facility. It is undisputed that the Plaintiff's license was never suspended or terminated by ADRS. (T-63:11-19)

Since March 2, 2005, the Plaintiff has continued to operate the Gordon Persons vending facility with the assistance of his wife.

### III.

### ALABAMA'S BLIND VENDOR PROGRAM

The Randolph-Sheppard Act, 20 U.S.C. § 107, *et seq.*, (hereinafter the Act) was passed by the United States Congress to provide blind persons with remunerative employment through the operation of vending facilities on federal property. The Act establishes a priority given to blind persons licensed by a state agency for the operation of vending facilities which were to be established on all federal property. The state agency designated by the federal government to administer the Act's program in Alabama is ADRS. The Alabama Legislature passed a statute providing for a preference for licensed blind persons in the operation of vending stands in the buildings and on the property of the State of Alabama, its agencies, institutions and political subdivisions. *Code of Alabama 1975* § 21-1-40, *et seq.*

5

ADRS has promulgated Administrative Code Rules to implement the Act's program in the State of Alabama. Administrative Code Rules of ADRS, Chapter 795-7-1 through 795-7-15. These rules are required to be drafted with the active participation of an elected committee of blind vendors and approved by the United States Department of Education. According to the statutes and rules that govern the program, a blind person obtains a license to operate a vending facility in the state of Alabama by completing training at the Alabama Institute for the Deaf and Blind. Administrative Code Rule 795-7-2-.01. Calvin Scott is a licensed blind vendor participating in the Act's program in Alabama. State employees known as Business Enterprise Program representatives work to establish vending facilities on federal, state, or private property in Alabama. These vending facilities exist at locations not controlled by the Alabama Department of Rehabilitation Services but by the individual agencies and entities that own the buildings where the facilities are located. Licensed blind vendors are either permanently or temporarily assigned to operate these vending facilities.

Each licensed blind vendor must enter into an agreement with the Alabama Department of Rehabilitation Services upon assignment to a facility. Administrative Code Rule 795-7-10-.01. This agreement covers the duties and responsibilities of the blind vendor. A blind vendor can be removed from a facility he is temporarily or permanently assigned to if he fails to adhere to the requirements of his agreement with the Alabama Department of Rehabilitation Services. He may also be removed at the request of the property manager where the facility is located. A licensed blind vendor who has been removed from a facility retains his license and can still participate in the program at a different facility.

## IV.

## ARGUMENT

After a full evidentiary hearing, the hearing officer determined that the Plaintiff was entitled to no relief. The hearing officer's decision is not surprising, given the undisputed evidence that on March 2, 2005, the Plaintiff resumed operation of the Gordon Persons vending facility, and all three of his original requests – a permanent swipe key, a designated parking place, and relocation of a snack machine – were granted. (T-50:8-51:2; T-66:17-23)   Even so, the Plaintiff remains dissatisfied. (Doc. 15)

As this Court correctly noted in its order dated September 21, 2005, a blind vendor who is dissatisfied with the outcome of a full evidentiary hearing "may file a complaint with the Secretary of the United States Department of Education, who is required to initiate binding arbitration. 20 U.S.C. § 107d-1(a)." (Doc 11, pages 1-2) The dispute resolution process set forth in the Act is mandatory. *Id.* The exhaustion requirement of the Act applies without regard to the nature of the relief sought by the Plaintiff. *New Hampshire v. Ramsey*, 366 F.3d 1, 19-20 (1st Cir. 2004).

Thus, until the Plaintiff exhausts the administrative remedies under the Act, this Court lacks jurisdiction to entertain his claims.

## V.

## CONCLUSION

The Defendants request that the Plaintiff's complaint be dismissed for failure to exhaust administrative remedies, without prejudice to the Plaintiff's right to file suit when all administrative remedies under the Act have been exhausted.

Respectfully submitted,

**TROY KING (KIN047)**
**ATTORNEY GENERAL**
**STATE OF ALABAMA**

**/s/ Margaret L. Fleming**
Margaret L. Fleming Bar Number: FLE001
Assistant Attorney General
11 South Union Street
Montgomery, AL 36130
Telephone: (334)242-7300
Fax: (334)353-8440
E-mail: mfleming@ago.state.al.us

**ATTORNEYS FOR DEFENDANT**
**JAMES SWEARENGIN**

_____
Stephen K. Simpson (SIM0027)
Assistant Attorney General
Alabama Dept. of Rehabilitation Services
P. O. Box 11586
Montgomery, Alabama 36111-0586
(334) 613-3453

**ATTORNEY FOR RAY DENNIS,**
**PERRY HOPPER, KEN GREEN, AND**
**ALABAMA DEPARTMENT OF**
**REHABILITATION SERVICES**

8

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 20th, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System and that I served a copy of the foregoing upon the following party who does not participate in electronic filing by U.S. Mail, postage prepaid, addressed as follows:

Calvin Scott, Sr.
1416 Marler Road
Pike Road, Alabama 36064

                                **s/ Margaret L. Fleming**
                                Margaret L. Fleming Bar Number: FLE001
                                Assistant Attorney General
                                11 South Union Street
                                Montgomery, AL  36130-0152
                                Telephone:  (334) 242-7300
                                Fax:  (334) 353-8440
                                E-mail:  mfleming@ago.state.al.us

# ADDENDUM A

## RECORD OF FULL EVIDENTIARY HEARING

### (Volumes I-V)

### (TRANSCRIPT AND EXHIBITS)

# ADDENDUM B

Administrative Code Rule 795-7-2-.04

795-7-2-.04   <u>Removal from a BEP Facility, Suspension, or Termination of License.</u>

(1)   The SLA shall issue licenses for an indefinite period. Licensees, temporary operators, and vendors are subject to removal, suspension, or termination. Suspension or termination of a license shall occur only after affording the vendor an opportunity for a full evidentiary hearing. If the vendor is dissatisfied with the full evidentiary hearing decision, he/she may request that a federal arbitration panel be convened by filing a complaint with the Secretary of the United States Department of Education. Removal, suspension, or termination may occur should the SLA find that the vending facility of a licensee, temporary operator, or vendor is not operated in accordance with:

(a)   licensing requirements,

(b)   the rules and regulations governing the program,

(c)   federal regulations governing the program,

(d)   the terms and conditions of the permit,

(e)   the terms and conditions of the operating agreement,

(f)   state law, the violation of which may result in physical harm to customers of the facility, the department, or the vendor;

(g)   regulations of other state of Alabama and federal agencies that have regulatory authority directly related to the operation of a BEP facility; and

(h)   rules prohibiting the use of alcoholic beverages or illegal drugs while on duty.

(2)   The suspension or termination of a license may be brought about by deterioration of the relationship between the grantor and the vendor that results in the grantor requesting removal of the vendor in order for the facility to remain a part of BEP.

(3)   The termination or suspension may result from failure of a vendor to fully disclose a felony conviction(s) that occurs during the time he or she is assigned a facility. Licensees shall disclose any present or past felony conviction(s) to the SLA. The SLA will not disclose this information unless it is a condition of placement involving a security clearance or grantor requirement.

(4)   The SLA may take action to remove vendors from their facility who become seriously delinquent in the submission of BEP 1-E monthly financial

reports and corresponding set-aside assessments due the set-aside fund, and escrow funds due the SLA escrow account for initial stocks, supplies or petty cash as defined by 795-7-6-.03 and the commissioner of ADRS.

(5)   Licensees, temporary operators and vendors whose license has been suspended or terminated shall return said license to the SLA within 15 days of suspension or termination.

(6)   Additionally, the SLA may suspend or terminate a license after affording the vendor an opportunity for a full evidentiary hearing for:

(a)   Improvement of vision such that the vendor no longer meets the definition of blind person as defined by applicable federal regulations. In order to ensure compliance, vendors may be required to undergo an ophthalmologic examination. The SLA shall approve the exam provider and costs for such an exam shall be the responsibility of the SLA.

(b)   Voluntary withdrawal of the vendor from the program upon written notification.

Author:   Alabama Board of Rehabilitation Services, Alabama Elected Committee of Blind Vendors
Statutory Authority:  Alabama Code 1975   21-1-40 and 21-9-9; 20 U. S. C. § 107 et. seq.
History:  Emergency adoption filed January 17, 1995; effective January 18, 1995.  Permanent adoption filed April 13, 1995; effective May 18, 1995. Repeal of original rule and succedent emergency adoption filed October 14, 1999; effective October 15, 1999; permanent adoption filed January 19, 2000; effective February 23, 2000.