# BEFORE THE ALABAMA DEPARTMENT
# OF REHABILITATION SERVICES

## IN RE: THE MATTER OF CALVIN SCOTT

**A Full and Evidentiary Hearing Pursuant to the Randolph-**

**Sheppard Vending Act 20 U.S.C. 107, et seq.**

# VOLUME IV

## [Pages 226 to 260]

# FREEDOM COURT REPORTING

226

1      A.     That was in January 1996.

2  Remember I showed you the letter.

3      Q.     1996?

4      A.     Uh-huh.

5      Q.     Okay.  But what I'm asking is

6  what evidence you have?

7      A.     Well, I have the letters he

8  wrote, those letters he wrote.  It shows

9  that -- it shows defamation of character.

10  He discriminated on us by taking -- he

11  didn't want us to have a swipe key.  The

12  janitors is not State employees and they

13  have swipe keys.  Even the night crew has

14  got swipe keys.  What's wrong with the

15  vendor that's been there all these years

16  having a swipe key?

17      Q.     All right.  I want you to

18  listen carefully to my question.  What

19  evidence do you have that those things

20  were because of Mr. Scott's race?

21      A.     I'm saying it's in the letter

22  that he wrote and for the request -- for

23  the request we had.

# FREEDOM COURT REPORTING

227

1    Q.    Now, is there anything in one

2    of the letters that mentioned race?

3    A.    No.  No.  It's nothing in

4    none of the letters mentioning race.

5    Q.    Well, do you have -- is there

6    a conversation that's occurred that

7    mentioned race to cause you to think --

8    A.    It's just the way we was

9    treated by him.  It's the way we was

10    treated by him.  That's how I feel.

11    That's my feeling.

12    Q.    I understand.

13    A.    That's the way we feel, the

14    way we was treated by him.

15    Q.    I understand that's your

16    feeling, and I don't mean to disrespect

17    your feeling.  But I'm saying you have

18    that feeling.  Do you have anything in

19    evidence, a document or is there a

20    conversation that has caused you to have

21    that belief?

22    A.    Yeah.  Any time you request a

23    parking place, a machine being moved and a

# FREEDOM COURT REPORTING

228

1    swipe key to get in the building to do

2    your work, he violated the ADA federal

3    laws for Americans With Disabilities.  And

4    those are discriminations.  He violated

5    those.

6         Q.    And I want to ask you again,

7    and I want you to listen carefully to the

8    question.  I'm not sure you're

9    understanding me.  I need you to listen to

10   the question.  Do you have any evidence?

11   Do you understand what I mean by evidence?

12        A.    No.  I don't have any

13   evidence.  No.  I don't have any evidence.

14   It's just -- it's just the dealing and the

15   facts of the letters that -- because James

16   Swearengin, we never had conversation.

17   That's what I couldn't understand what was

18   his problem.  I've got a right to feel

19   like he don't like us.  I can work around

20   him all day and not speak to him and do

21   our business and never cause him any

22   problems.  Never disrespect him.  None

23   whatsoever.  Whatever his problem is, I

# FREEDOM COURT REPORTING

229

1    don't know.  But I know how he treat us,

2    and that's all I can go on is the results

3    of how he treated us and the results of

4    those three requests how it turned out to

5    be so corrupt that he asked us to move.

6         Q.    Okay.

7         A.    And it didn't cost him

8    nothing and it wasn't no undue hardship.

9    He violated the Americans With

10   Disabilities Act.  Any time --

11        Q.    Okay.  Now, let me ask you

12   that next question.  You say he violated

13   the Americans With Disabilities Act,

14   Ms. Scott; is that correct?

15        A.    Yeah, because he didn't -- he

16   didn't want to get those -- he didn't get

17   those -- he gave them because he was

18   forced to give them.

19        Q.    In what way did he violate

20   the Americans With Disabilities Act?

21        A.    They wrote for Calvin to

22   move.  He wrote us -- for us to move.  He

23   wrote us up to move.  They didn't tell

# FREEDOM COURT REPORTING

230

1    Calvin nothing -- mention nothing about

2    the request and what the meeting was all

3    for.  The meeting was called for the

4    request that we'd put in about the swipe

5    key and the -- and to get a swipe key, a

6    parking place and a machine moved.  It

7    turned out to be a corrupt, terrible

8    thing.  We come home tired of getting

9    phone calls on the 9th, because it was the

10   31st out here with Ray.  And that letter I

11   wrote the Office of Civil Rights is dated

12   February 3rd.  I know it didn't take that

13   long to get no swipe key.  He was

14   unaccommodating.  He was unaccommodating.

15        Q.    His failure to get you --

16   it's your allegation his failure to get

17   you a swipe key was --

18        A.    For the blind vendor.  It

19   wasn't for me.  It was for the blind

20   vendor that's a permanent vendor there.

21        Q.    But you're alleging that that

22   was a violation of the ADA?

23        A.    It was.

# FREEDOM COURT REPORTING

231

1        Q.     Okay.

2        A.     He failed to accommodate.

3        Q.     Now, I'll ask you again.

4   What evidence, if any, do you have that

5   the failure to give Mr. Scott a swipe key

6   was on account of his disability?

7        A.     I don't have no evidence of

8   it.  Only thing I have is a conversation

9   that he told me that I didn't work for the

10  State.  But I told him my husband work the

11  State Business Enterprise Program and that

12  is the State.  That is the State.  And

13  that is a public building.  That's a

14  taxpayer building there.  He works for the

15  State because he's through the State

16  Rehabilitation.  That's why we are here.

17  If he's self-employed, how could they push

18  me off from working with him?  I mean,

19  they don't furnish the car, neither do

20  they pay the driver.  They don't do any of

21  that.  So it is.  And then another

22  thing --

23       Q.     Excuse me.  It's your

# FREEDOM COURT REPORTING

232

1    contention that you're a State employee

2    because your husband worked for the

3    Business Enterprise Program?

4         A.    No.  I'm not a State

5    employee.  No.  I'm not a State employee.

6    I'm assisting to my husband.

7         Q.    Do you believe that your

8    husband is a State employee?

9         A.    Yes, through the Business

10   Enterprise Program because they are

11   Rehabilitation -- Alabama State

12   Rehabilitation Business Enterprise

13   Program.  Whether we have a contract or

14   not, he pay eleven percent of his income

15   to them and plus the escrow every month.

16   So he is through the Business Enterprise.

17   How could they up and tell him I couldn't

18   be his driver?

19         Q.    Okay.

20         A.    Tell me that.  How could they

21   come in and do all this and talk about the

22   program, this and all that if he's not an

23   employee under them?  They put them out

# FREEDOM COURT REPORTING

233

1    there, these blind vendors out there and

2    tell you you're self-employed.  They stock

3    it.  You've got to go on your own.  And if

4    somebody comes in and robs you and

5    vandalizes your machine, you're left out

6    there with no pay.  You've got to do the

7    best you can to get your machines back up

8    to get on your feet to earn a living.  So

9    he is with the State Rehabilitation

10   Service.  I'll contest that until I die

11   because this -- this is how -- who he's

12   involved with.

13           Q.    Okay.  Now, other than the

14   testimony you've given here today and the

15   exhibits that you've offered into

16   evidence, do you have any other evidence

17   that shows or would support your theory?

18           A.    All I have are the facts.

19           Q.    Other than--

20           A.    All I have is facts.

21           HEARING OFFICER:  Let her finish

22   asking her question.

23           Q.    Other than the testimony

# FREEDOM COURT REPORTING

234

1    you've given us and all the exhibits that

2    you've offered here today, do you have any

3    other evidence that either -- well, that

4    Mr. Scott has been a victim of

5    discrimination by Buddy Swearengin?

6            A.    No.  I don't have any

7    evidence.  The facts speak for themselves.

8            Q.    Thank you.

9            A.    Harassment, retaliation,

10   intimidation is discrimination.  I got all

11   that information from the United States

12   Department of Education Office of Civil

13   Rights.  All of that is retaliation.  He

14   retaliated.  We got intimidated.  We got

15   harassed.  We got --

16            MR. SCOTT:  Threats.

17           A.    We had threats.  All of that

18   is discrimination.

19           Q.    And, again, Ms. Scott, since

20   you've introduced all of that, is all your

21   evidence of those things, has it been

22   introduced here in these proceedings

23   today?

# FREEDOM COURT REPORTING

235

1          A.    Well, those letters prove it.

2     Anybody read those letters, they can put

3     it together.

4          Q.    The letters --

5          A.    The facts --

6          Q.    Excuse me, Ms. Scott.  I need

7     you to listen to my question.  The letters

8     that you have put into evidence here

9     today, those are the letters you're

10    speaking of; is that correct?

11         A.    Yes.  Uh-huh.

12         Q.    And you have no other

13    evidence other than what has been

14    presented today?

15         A.    No.  And this is something I

16    want to speak about in this --

17         Q.    Please just respond to my

18    question.

19              HEARING OFFICER:  You've

20         responded to her question.

21         Q.    Do you have any other

22    evidence of discrimination other than what

23    you've presented?

# FREEDOM COURT REPORTING

236

1    A.    That's all I have.

2        MR. SCOTT:  That's it.

3        MS. FLEMING:  Thank you.

4        HEARING OFFICER:  Now, I guess

5    we're back to Ms. Scott.  Do you have

6    anything else?

7        MS. SCOTT:  Yes.  I would like

8    to mention this here in the State

9    Code here.

10        HEARING OFFICER:  All right.  I

11    think why don't you hold on to that

12    for now.  It sounds like you want to

13    make some argument at this time.  Am

14    I correct?  Well, maybe you don't

15    know.

16        MS. SCOTT:  I'm not trying to

17    make an argument because I've turned

18    in the facts.  I've turned in the

19    facts.  And I understand --

20        HEARING OFFICER:  Then we'll go

21    back to what you wanted to do earlier

22    then.

23        MS. SCOTT:  Okay.  And also what

# FREEDOM COURT REPORTING

237

1    Ray Dennis done -- well, we had to

2    take all the money up.  We missed two

3    weeks pay in March because we had no

4    money accumulate in the machines.  We

5    had to be filling them.  And so

6    Calvin has service with Coca-Cola

7    Bottling Company.  They come in and

8    service the machines.  And his check

9    didn't come for February.  He got

10   inventoried out on the 23rd.  Well,

11   the month of February was Calvin's --

12   that was still Calvin's facility.  So

13   I told Calvin, I said, You need to

14   call down at Coke and see what's the

15   matter with your check, because we

16   called way up in Florida where the

17   checks are cut at, and they didn't

18   have nothing for Calvin.  So I told

19   him he better call the bottling

20   company here.  And we even went out

21   there.  Ken Green called us on the

22   18th of March.  This is the letter I

23   wrote.  On the 18th of March from Ken

# FREEDOM COURT REPORTING

238

1    Green says Ray told him to call and

2    tell Calvin that his check would be

3    late, that he had put a hold on his

4    Coke commission check.  So we went

5    there and talked to him.  We was

6    trying to find out.  We wanted copies

7    of where Ray had called out there, a

8    letter or what.  We was trying to get

9    copies of it.  And I faxed Ms. Thelma

10   that same day a letter and explained

11   to her and told her who the man was.

12   And if I find that letter again, I

13   will.  I've got a copy of it.  But

14   anyway, he put a hold on his check.

15   Normally you get the check, the

16   February check, you'll get it in

17   March around about the middle of

18   March or maybe around the first week

19   in March.  This check didn't come.

20        HEARING OFFICER:  Okay.  If I

21   understand you correctly, a hold was

22   put on Mr. Scott's February check and

23   it did not get there until sometime

# FREEDOM COURT REPORTING

239

1      when?

2           MS. SCOTT:   April.   He closed us

3      out on every financial situation he

4      could.   Ray did.   Done pushed him

5      out, took -- and the month of

6      February was his.   The last day that

7      Coke serviced those machines was

8      February the 22nd, and I have

9      invoices here.   He inventoried Calvin

10     out on the 23rd.   But the month of

11     February, that commissions check,

12     Calvin earned that.   That was his

13     check.   That check was his.   He

14     shouldn't have put a hold on Calvin's

15     check.   And there we didn't have no

16     income coming in.   We wasn't allowed

17     to go down to the building and stock

18     the machines, because I wanted to go

19     down and take the money out and let

20     him have it.   But I wasn't permitted

21     in the building.

22           And let me see what it was I've

23     got in here.   Oh, yeah.   Because

# FREEDOM COURT REPORTING

240

1    we've having to leave invoices for

2    the amount of cases that they put in

3    those machines.  So these are the

4    invoices.  The last day of service

5    for Coke was February the 22nd.

6         HEARING OFFICER:  I've got to

7    tell you I don't understand what

8    you're saying to me about Coca-Cola.

9         MS. SCOTT:  February the 22nd.

10   Here's the man's name and all that.

11        MR. SIMPSON:  I may be able to

12   explain it if you'd like a

13   stipulation that she might even

14   accept.

15        HEARING OFFICER:  Do you want to

16   just be quiet and listen for a

17   minute?

18        MS. SCOTT:  Well, we run this

19   business and I would like --

20        HEARING OFFICER:  Do you want to

21   be quiet and just listen for a

22   minute?

23        MS. SCOTT:  Okay.

# FREEDOM COURT REPORTING

241

1        HEARING OFFICER:  In a procedure

2    like this, the parties can stipulate

3    to certain facts if both sides agree

4    with a certain set of facts.

5        MS. SCOTT:  Okay.

6        HEARING OFFICER:  And I can

7    accept that as a stipulation --

8        MS. SCOTT:  Okay.

9        HEARING OFFICER:  -- without any

10   evidence at all.  Mr. Simpson is

11   about to offer you-all a stipulation

12   to see if you want to agree with it.

13       MR. SIMPSON:  A portion of

14   Mr. Scott's income, a part of his

15   income is derived from payments made

16   by Coca-Cola and Pepsi directly to

17   him of a commission based on the

18   sales out of Coca-Cola and the Pepsi

19   drink machines that Mr. Scott doesn't

20   have to service, load.  The

21   representatives of Coca-Cola and

22   Pepsi load.  Mr. Ray Dennis when

23   this -- these problems arose and it

# FREEDOM COURT REPORTING

242

1    appeared that Mr. Scott was going to

2    be removed on February 24th notified

3    Coca-Cola and Pepsi that he was no

4    longer going to be the blind vendor

5    assigned to the Gordon Persons

6    Building.  This caused the Coca-Cola

7    and Pepsi companies to stop payments

8    on the checks that would normally

9    arrive to Mr. Scott.  All those

10   things happened.  We admit that.

11   That's exactly what happened.

12        HEARING OFFICER:  Let me ask

13   you.

14        MR. SIMPSON:  Then Mr. Dennis

15   informed them that the problems at

16   the Gordon Persons Building had been

17   resolved, and payment of all the

18   amounts owed by Coca-Cola and Pepsi

19   were then later made to Mr. Scott.

20        HEARING OFFICER:  Do you-all

21   accept that stipulation?

22        MS. SCOTT:  No.  I want to say

23   this.

# FREEDOM COURT REPORTING

243

1        HEARING OFFICER:  Do you accept

2    any part of the stipulation?

3        MS. SCOTT:  Yeah.  Some parts of

4    it.

5        HEARING OFFICER:  Well, hold on

6    a minute.  Do you accept the

7    stipulation that a portion of

8    Mr. Scott's income is derived from

9    commissions on Coke and Pepsi

10   machines in the Gordon Persons

11   Building?

12       MS. SCOTT:  Yes.

13       HEARING OFFICER:  And that

14   Mr. Scott does not have service?

15       MS. SCOTT:  Yes.

16       HEARING OFFICER:  You accept

17   that stipulation?

18       MS. SCOTT:  Yes.

19       HEARING OFFICER:  Do you accept

20   the stipulation that Mr. Scott

21   advised Coke and Pepsi that Mr. Scott

22   had -- Mr. Dennis advised Coke and

23   Pepsi that Mr. Scott was going to be

# FREEDOM COURT REPORTING

244

1    removed?

2          MS. SCOTT:  Do I accept it?

3          HEARING OFFICER:  Yes.

4          MS. SCOTT:  Well, he said Calvin

5    never was removed, but he done called

6    these people and said that he's being

7    removed.

8          HEARING OFFICER:  You don't

9    accept the stipulation?

10          MS. SCOTT:  Of him saying he was

11    removed?  Yes, I accept it, because

12    he had removed him.  He had

13    inventoried him out.

14          HEARING OFFICER:  I don't

15    understand why you have to argue when

16    you say that you accept it.

17          MS. SCOTT:  Well --

18          HEARING OFFICER:  You're

19    accepting the stipulation that when

20    it appeared that Mr. Scott was going

21    to be removed, Mr. Dennis advised

22    Coke and Pepsi of that fact.  Do you

23    accept that stipulation?

# FREEDOM COURT REPORTING

245

1    MS. SCOTT: Yes. Okay. Yes.

2    HEARING OFFICER: And do you

3    accept the stipulation that later on

4    when it appeared -- when it was

5    determined that Mr. Scott was not

6    going to be removed, Mr. Dennis

7    informed Coke and Pepsi of that fact?

8    MS. SCOTT: Well, you know, I

9    don't know who informed them. I

10    don't know how to answer that

11    question because we had been down

12    there and --

13    HEARING OFFICER: You decline to

14    accept the stipulation. That's all

15    I'm asking. Yes or no?

16    MS. SCOTT: Oh, I don't know. I

17    don't know.

18    HEARING OFFICER: All I'm asking

19    is yes or no. You don't have to say

20    I don't know. I don't know. That's

21    so argumentative.

22    MS. SCOTT: Something happened

23    that he got his check back. It was a

# FREEDOM COURT REPORTING

246

1    month we didn't get it.  In April and

2    May, we got it -- we got it in April

3    on April the 6th.

4         HEARING OFFICER:  Okay.  You

5    received a check on what date in

6    April?

7         MS. SCOTT:  April the 6th, 2005.

8    Normally the checks would have come

9    out around March the 6th, 2005.  So

10   we was a month late getting the

11   check.

12        HEARING OFFICER:  I understand.

13        MS. SCOTT:  And also through him

14   doing that, it also threw Calvin's

15   March check from being late with all

16   the confusion and all the calling and

17   stopping that Ray had done, that they

18   put a hold on the check.

19        HEARING OFFICER:  Your testimony

20   is that the March check was also

21   late?

22        MS. SCOTT:  Uh-huh.  It was also

23   late.

# FREEDOM COURT REPORTING

247

1       HEARING OFFICER:  How late was

2   it?

3       MS. SCOTT:  We didn't get March

4   check --

5       HEARING OFFICER:  How late was

6   it?

7       MS. SCOTT:  Oh, it probably was

8   a month late.

9       MR. SCOTT:  It was over a month.

10      MS. SCOTT:  Uh-huh.  Uh-huh.

11      HEARING OFFICER:  Any further

12  evidence?

13      MS. SCOTT:  No.  You didn't want

14  these invoices?

15      HEARING OFFICER:  That's up to

16  you.

17      MS. SCOTT:  They inventoried him

18  out on the 22nd.  And what I am

19  saying, that Ray was wrong.

20      HEARING OFFICER:  Do you want to

21  offer this?

22      MS. SCOTT:  I want to offer

23  this.  And the 22nd was the last day

# FREEDOM COURT REPORTING

248

1    they serviced that.  That check was

2    really Calvin's.  He should not have

3    put a hold on that check.

4         HEARING OFFICER:  You want to

5    offer this as Exhibit Number 26.

6         MS. SCOTT:  Last day of service

7    was on the 22nd.  There you go.  This

8    is the month of February.

9         HEARING OFFICER:  Okay.  Hold

10   on a minute.  Just tell me why you

11   want to offer Exhibit 26.  What does

12   it prove?

13        MS. SCOTT:  Proves that he

14   deliberately put a hold on Calvin's

15   check after pushing us out.  And we

16   didn't have no means of income

17   because the month of February was

18   definitely Calvin's.

19        HEARING OFFICER:  All right.  If

20   I understand this correctly,

21   Defendant's Exhibit Number 26 is

22   offered for the purpose of showing

23   that Mr. Scott was deliberately

# FREEDOM COURT REPORTING

249

1    pushed out.

2         MS. SCOTT:  He cut out his

3    check.  He called to stop his check.

4    I mean, the whole month of February

5    was his.  The last day it was

6    serviced was February 22nd.  He

7    inventoried him out on the 23rd.  So

8    that means like that next Tuesday

9    would have been whoever else was

10   going to be vendor.  That month of

11   February, the check belonged to

12   Calvin.  He shouldn't have put a hold

13   on that check.

14        HEARING OFFICER:  That's Mr. --

15   who are you referring to?  Mr. who?

16        MS. SCOTT:  Ray Dennis.

17        HEARING OFFICER:  Mr. Dennis.

18   Okay.  Anything else?  Any other

19   evidence?  All right.

20        MS. SCOTT:  I don't know whether

21   you have a copy of this where I wrote

22   up about --

23        HEARING OFFICER:  I don't have

# FREEDOM COURT REPORTING

250

1      anything other than what I'm offered

2      here today.

3          MS. SCOTT:  Well, this is where

4      I wrote to whom it concerned about

5      the --

6          HEARING OFFICER:  You want to

7      offer that in evidence?

8          MS. SCOTT:  Offer that.  Yes.

9      They have that, you know.

10         HEARING OFFICER:  This is --

11         MS. SCOTT:  It's where I wrote

12     and explained to them that we was --

13         MR. SIMPSON:  I believe that

14     it's actually a copy of

15     correspondence that's already in

16     there.

17         MS. SCOTT:  Some might be in

18     there.  Representative Thad McClammy

19     is one and along with all those

20     letters I sent.  I faxed him one

21     along with all the letters.

22         HEARING OFFICER:  If it's

23     already in, we don't need any extra

# FREEDOM COURT REPORTING

251

1    paper.

2          MS. SCOTT:  All right.

3          HEARING OFFICER:  Is there

4    anything further?

5          MS. SCOTT:  Not that I can think

6    of right now.

7          MR. SCOTT:  No.

8          HEARING OFFICER:  Well, this is

9    the last opportunity for this

10   hearing.

11         MS. SCOTT:  I hope I done told

12   it all.

13         HEARING OFFICER:  Is there

14   anything further from ADRS?

15         MR. SIMPSON:  No, sir.

16         HEARING OFFICER:  From the

17   Finance Department?  You're

18   representing Mr. Swearengin.

19         MS. FLEMING:  No.

20         MS. SCOTT:  It's just that I

21   didn't -- somehow or other I

22   misplaced that where Ray Dennis

23   inventoried Calvin out.

# FREEDOM COURT REPORTING

252

1      HEARING OFFICER:  Well, we're

2  through with all the evidence.  Okay?

3      MS. SCOTT:  All right.  And I

4  couldn't find it.

5      HEARING OFFICER:  We're through

6  with all the evidence.

7      MS. SCOTT:  Okay.

8      HEARING OFFICER:  You know, if

9  this were a jury trial, it would be

10  traditional to offer both sides the

11  opportunity to make a closing

12  argument.  But this is sort of a

13  unique situation here in that we have

14  folks on the right-hand side of the

15  table who are not lawyers and who are

16  not represented by lawyers in this

17  proceeding.  Lawyers typically make

18  closing arguments and know how to

19  make closing arguments, and lay

20  people generally don't know how to do

21  that.  The other thing is that in a

22  non-jury case or in a hearing in

23  which there is no jury, closing

# FREEDOM COURT REPORTING

253

1    arguments are not the norm.  So I

2    will ask, given all that, does

3    anybody want to make any closing

4    arguments?

5         MR. SIMPSON:  No, Your Honor.

6         MS. SCOTT:  Well, I would just

7    like to say that we done no wrong to

8    be pushed out like we did because of

9    three simple requests.  It came out

10   to be corrupt.  Calvin asked Ray and

11   them to go get him a key.  We got

12   pushed out because he needed

13   accommodations.  And the ADA laws

14   state that people with disabilities

15   are supposed to work and enjoy their

16   place of employment.  And these

17   things, the changes that he made was

18   for him to have -- for his work to go

19   along better for him.  A swipe key

20   and don't have no trouble parking at

21   the loading dock.  And the placement

22   of that machine being moved from down

23   there in a corner in a little room

# FREEDOM COURT REPORTING

254

1    out of the eyes of the people, it

2    didn't cause -- there was no undue

3    hardship.  That was an evil and a

4    cruel thing to do to us, and Calvin's

5    advocates went along with it to push

6    us out.  That was an evil thing to

7    do.  We'd done no harm, done nothing

8    but good.  You think that the

9    building is so big.  They was more

10   worried about Calvin making a hundred

11   thousand dollars.  It's been a mess

12   about that building from the

13   beginning.  They got rid of

14   Calvin's --

15        HEARING OFFICER:  Well, this is

16   the time to comment on the evidence.

17   We don't want comment on stuff that's

18   not in evidence.  Go ahead.  I didn't

19   mean to interrupt.

20        MS. SCOTT:  But that was a cruel

21   thing to do, to come up with that,

22   the results, because the swipe key

23   being taken from us and the requests

# FREEDOM COURT REPORTING

255

1    being sent to his advocates down to

2    do for him, they done nothing.  And I

3    had asked Ray.  Ray knew that

4    Swearengin wasn't going to do it.

5    But each time Keith Green went to

6    them, he said for us to move.  Every

7    time Ken brought that back.  And that

8    was cruel.  It didn't cost him

9    nothing.  And his employees have to

10   do their work.  Ray and them stood by

11   and allowed him because they said

12   that he's the building manager.

13   Well, they are the State licensing

14   agency.  How can a building manager

15   tell you what blind vendors are put

16   in a State public building?  He's not

17   supposed to have that power over

18   y'all.  You're the State licensing

19   agency.  Y'all stood by and allowed

20   it to happen.  You could have went

21   and done what I done.  I got on a

22   mountain and screamed.  I wrote all

23   them people to get us back to work.

# FREEDOM COURT REPORTING

256

1    And I had told you, Ray, to go to the

2    utmost part to get it done, that it

3    wasn't no sin and it wasn't no crime.

4         HEARING OFFICER:  Well, I want

5    you to talk to me.

6         MS. SCOTT:  Okay.  Anyway,

7    that's what I told him.  And it's

8    just terrible that it turned out, you

9    know, like it did for us.  It's a

10   hurting thing.  Calvin's emotionally

11   disturbed.  He couldn't hardly talk

12   on the phone when the United States

13   Government called.  I'm the one that

14   got on there.  He was so disgusted

15   with Perry.  Perry was supposed to

16   hit the ceiling and walk out on this.

17   Ray has never caused Calvin nothing

18   but problems from day one.  He sued

19   to be Calvin's rep.

20        HEARING OFFICER:  We don't -- we

21   don't have any evidence on that.

22        MS. SCOTT:  Okay.  All right.

23        HEARING OFFICER:  I don't want

# FREEDOM COURT REPORTING

257

1    to cut you off, but do you have

2    anything else you want to say about

3    the law or the evidence presented

4    today?

5        MS. SCOTT:  No.  No more than it

6    was terrible what happened.  It was a

7    very terrible thing for him to do to

8    us.

9        HEARING OFFICER:  Okay.  I've

10   heard that three times.  Is there

11   anything else?

12       MR. SIMPSON:  Your Honor, not in

13   the way of argument or closing

14   argument, I just want to point out

15   that in Magistrate Coody's order he

16   directs the Department to report to

17   the Court the outcome of this

18   proceeding within five days.

19       HEARING OFFICER:  He gave

20   you-all all that time to arrange this

21   and he only gives me five days.

22       MS. SCOTT:  But he said in a

23   month, in thirty days.

# FREEDOM COURT REPORTING

258

1      HEARING OFFICER:  I have the

2   order.

3      MR. SIMPSON:  I just wanted

4   to --

5      HEARING OFFICER:  I have the

6   order.

7      MS. SCOTT:  The order say five

8   days?

9      HEARING OFFICER:  I have the

10  order.  You can read it and I can

11  read it.

12     MS. SCOTT:  We got an order that

13  he sent to us, too.  And down in the

14  court he said we had thirty days.

15  And I also have recorded -- I went by

16  and picked up a court report --

17     HEARING OFFICER:  No, ma'am.

18  That's not necessary.

19     MS. SCOTT:  -- on the hearing

20  that was done there.  I also have

21  that.  I went by and picked it up,

22  paid money to get it.

23     MR. SIMPSON:  The other thing

# FREEDOM COURT REPORTING

259

1    that I wanted to point out that I'm

2    not sure Magistrate Coody addresses

3    in his order, the next step in the

4    due process proceeding set out in the

5    federal statute Randolph-Sheppard

6    Act --

7         HEARING OFFICER:  Arbitration.

8         MS. SIMPSON:  The Department

9    would request that any order that you

10   would issue would set out that the

11   next step is to file a complaint with

12   the Secretary of the United States

13   Department of Education.

14        HEARING OFFICER:  Okay.

15        MR. SIMPSON:  That's all.

16        HEARING OFFICER:  All right.

17   Well, this hearing is adjourned.

18

19

20

21

22

23

# FREEDOM COURT REPORTING

260

```
 1                    CERTIFICATE

 2

 3    STATE OF ALABAMA

 4    ELMORE COUNTY

 5

 6            I hereby certify that the

 7    above and foregoing proceeding was

 8    taken down by me in stenotype and the

 9    questions and answers thereto were

10    transcribed by means of computer-aided

11    transcription, and that the foregoing

12    represents a true and correct transcript

13    of the testimony given by said witnesses

14    upon said hearing.

15            I further certify that I am

16    neither of counsel, nor of kin to the

17    parties to the action, nor am I in anywise

18    interested in the result of said cause.

19

20

21    Virginia Denese Barrett

22    VIRGINIA DENESE BARRETT

23    MY COMMISSION EXPIRES 5/19/07
```