IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CALVIN SCOTT, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.  2:05cv651-WKW |
| | ) | |
| JAMES (BUDDY) SWEARENGIN, JR., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| CALVIN SCOTT, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.  2:05cv652-WKW |
| | ) | |
| RAY DENNIS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

In these cases, the blind *pro se* plaintiff alleges that his rights were violated when the defendants failed to accommodate his handicap and denied him access to areas in his work place where he operates vending machines.  The plaintiff complains that he was not provided a permanent "swipe key" for entry into a locked area; he was not provided a designated parking space; and the defendants would not relocate a vending machine for him.[1]  All of his

---

[1]  Although he names different defendants, a review of the complaints demonstrate that the plaintiff is complaining about the same events in both actions.  *See* Compls., Docs. # 1. The plaintiff lists the same dates, January 31, 2005, February 9, 14, and 22, 2005, as the dates of the alleged violation of his rights in both lawsuits.  He also alleges the same facts in support of his claims.

On the dates listed, the above defendant(s) violated my constitutional rights for equal

Case 2:05-cv-00651-WKW-CSC   Document 57   Filed 10/17/08   Page 2 of 11

claims arise from his participation in the Randolph-Sheppard Vending Facilities Program, a federal program for blind vendors administered by the Alabama Department of Rehabilitation Services.[2]  *See* 20 U.S.C. § 107, *et seq.*

The plaintiff sues James Buddy Swearengin, Jr., the Building Manager of the Gordon Persons Building; Perry Hopper, the Director of the Alabama Department of Rehabilitation Services, Business Enterprise Program; and Ken Green, the Assistant Director of the Alabama Department of Rehabilitation Services, Business Enterprise Program.  He seeks damages in the amount of one million dollars from each defendant, as well as the defendants' incarceration for six months.

---

employment access when they denied me the same access as all other non-handicapped workers to my assigned work area(s), denied me reasonable accommodations as I requested per both state and federal ADA Title I, II, and 504 laws.   Then the defendant(s) conspired/corroborated with others defame my character, ruin my good reputation, and take away my right for equal employment and my ability to be self sufficient to provide for myself and my family.  Their corroborated actions of defamation of character, slander, libel, intimidation, harassment, threats to my livelihood, and their rush to judgement (sic) immediately cost me my job.  With me being elderly and totally blind their actions caused me to be emotionally damaged and distressed to say the least."

(Doc. # 1).  However, on September 20, 2005, the court heard oral arguments on the defendants' motion to dismiss, and at that time, the plaintiff has since clarified his complaints as the three previously listed.

[2]  In his opposition to the arbitration decision (doc. # 56), the plaintiff argues that he is entitled to a jury trial and he should be permitted to proceed with a claim under the ADA, notwithstanding his previous representations to the court that his claims fall under the Randolph Sheppard Act.

More to the point, however, to the extent that the plaintiff attempts to raise an accommodation claim under the ADA, his claim fails for the simple reason that the defendants accommodated all of his requests.  The ADA provides that no covered employer shall discriminate against "a qualified individual with a disability because of the disability of such individual" in any of the "terms, conditions [or] privileges of employment."  42 U.S.C. § 12112(a).  Consequently, the ADA imposes upon employers the duty to provide reasonable accommodations for known disabilities unless doing so would result in an undue hardship to the employer.  42 U.S.C. § 12112(b)(5)(A).  *See also Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001).  It is undisputed that the accommodations of a permanent "swipe key" for entry into a locked area, a designated parking space, and relocation of a vending machine, requested by the plaintiff were provided by the defendants.  Consequently, any ADA accommodation claim fails as a matter of law.

2

The court has jurisdiction pursuant to 28 U.S.C. § 1331. The court stayed this action pending the plaintiff's exhaustion of administrative remedies. The Alabama Department of Rehabilitation Services conducted an evidentiary hearing, and the parties submitted to binding arbitration in accordance with the Randolph-Sheppard Act. *See* 20 U.S.C. § 107, *et seq.* On December 5, 2007, the arbitration panel ruled against the plaintiff. On May 9, 2008, the court lifted the stay and referred this action back to the United States Magistrate Judge for further proceedings.

The court ordered the parties to brief the question whether the arbitration decision should be set aside as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Premo v. Martin*, 119 F.3d 764, 768 (9th Cir. 1997). The parties filed their briefs on September 22, 2008. The matter is now before the court for review of the decision rendered by the arbitration panel.

## STANDARD OF REVIEW

Claims arising out of the Randolph-Sheppard program are governed by federal statute, which establishes a mandatory dispute resolution process. *See* 20 U.S.C. § 107d-1(a). The Randolph-Sheppard Act allows "[a]ny blind licensee who is dissatisfied with any action arising from the operation or administration of the vending facility program to submit . . . a request for a full evidentiary hearing." 20 U.S.C. § 107d-1(a). If a blind vendor requests a hearing, the hearing is mandatory. If the blind licensee is dissatisfied with the results of the evidentiary hearing, he is entitled to arbitration. The blind licensee files a complaint with the Secretary of the United States Department of Education who, in turn, is required to initiate

binding arbitration. *Id.*

> If such blind licensee is dissatisfied with any action taken or decision rendered as a result of such hearing, he may file a complaint with the Secretary who shall convene a panel to arbitrate the dispute pursuant to section 107d-2 of this title, and the decision of such panel shall be final and binding on the parties except as otherwise provided in this chapter.

20 U.S.C. § 107d-1(a).

The decision of the arbitration panel is "subject to appeal and review as a final agency action for purposes of chapter 7 of such Title 5." 20 U.S.C. § 107d-2(a). *See also Ga. Dep't of Human Res. v. Nash*, 915 F.2d 1482, 1484 (11th Cir. 1990).

> An arbitral award under the Randolph-Sheppard Act is reviewed as an agency action under the standards set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. *See* 20 U.S.C. § 107d-2. Under the APA, agency action may be set aside only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A); *In re Transcon Lines*, 89 F.3d 559, 563 (9th Cir. 1996).

*Premo*, 119 F.3d at 768. *See also Kentucky v. United States,* 424 F.3d 1222, 1228 (Fed. Cir. 2005) ("Congress provided that arbitration decisions would be reviewed under the standards set forth in the Administrative Procedure Act, i.e., that a court would set aside the arbitration decision only if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."); *Delaware Dep't. of Health & Soc. Servs, Div. for Visually Impaired v. United States Dep't. of Educ.* 772 F.2d 1123, 1128 (3rd Cir. 1985) ("5 U.S.C. § 706 (1982) permits the reviewing court to set aside agency adjudicative actions which are: arbitrary, capricious, an abuse of discretion or otherwise not in accordance to law, without observance of procedures required by law, or unsupported by substantial evidence.").

The burden is on the plaintiff to demonstrate that the decision of the arbitration panel is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A).  This standard of review is "highly deferential."  *Fund for Animals, Inc. v. Rice* 85 F.3d 535, 541 (11th Cir. 1996);  *Fla. Mfd. Hous. Ass'n, Inc. v. Cisneros,* 53 F.3d 1565, 1572 (11th Cir. 1995) (*quoting Hussion v. Madigan*, 950 F.2d 1546, 1553 (11th Cir. 1992)).  "The scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency."  *Motor Vehicle Mfrs. Ass'n of the U. S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

> To determine whether an agency decision was arbitrary and capricious, the reviewing court 'must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.' This inquiry must be 'searching and careful,' but 'the ultimate standard of review is a narrow one.' Along the standard of review continuum, the arbitrary and capricious standard gives an appellate court the *least* latitude in finding grounds for reversal; '[a]dministrative decisions should be set aside in this context ... only for substantial procedural or substantive reasons as mandated by statute, ... not simply because the court is unhappy with the result reached.' The agency must use its best judgment in balancing the substantive issues. The reviewing court is not authorized to substitute its judgment for that of the agency concerning the wisdom or prudence of the proposed action. [*North Buckhead Civic Ass'n* v.] *Skinner*, 903 F.2d [1533,] 1538-40 [(11th Cir. 1990)] (footnotes and citations omitted) (emphasis added). *See also Marsh v. Oregon Nat. Res. Council,* 490 U.S. 360, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989).

*Fund for Animals,* 85 F.3d at 541-542.  *See also Fla. Mfd. Hous. Ass'n, Inc.,* 53 F.3d at 1572.

With these principles of law in mind, and in accordance with the Administrative Procedures Act, 5 U.S.C. § 706, and the Randolph-Sheppard Act, 20 U.S.C. § 107d-2, the court now determines whether the arbitration decision was "arbitrary, capricious, an abuse

5

of discretion, or otherwise not in accordance with the law."

## DISCUSSION

The plaintiff is a blind vendor who operates vending machines at the Gordon Persons Building in Montgomery under the auspices of the Alabama Department of Rehabilitation Services ("ADRS"). In January 2005, defendant Swearengin requested that the plaintiff and his wife, who serves as his assistant, be removed from the building because, according to Swearengin, "[t]he Scotts are high tempered, as well as unreasonable." On January 31, 2005, defendant Swearengin deactivated and took the plaintiff's electronic swipe key. On February 9, 2005, defendant Dennis notified the plaintiff that his wife would no longer be allowed to assist him. On February 14, 2005, defendant Dennis again informed the plaintiff that his wife could not assist him. Finally, on February 22, 2005, defendant Dennis informed the plaintiff that he and his inventory would be removed from the Gordon Persons Building on February 23, 2005. After numerous letters and several meetings, the parties reached a settlement which allowed the plaintiff to remain at the building and service his vending machines, and allowed his wife to continue serving as his assistant. They were also provided a permanent electronic swipe card and a designated parking place. The plaintiff returned to work under these conditions on March 2, 2005.

On February 24, 2005, the plaintiff requested an administrative review in accordance with the regulations. *See* ALA. ADMIN. CODE r. 795-7-12-.01. An administrative review was scheduled for March 10, 2005. ALA. ADMIN. CODE r. 795-7-12-.02. However, after the plaintiff returned to servicing his vending machines in the building on March 2, 2005, and

6

prior to the hearing, Scott declined to participate in the administrative review. Consequently, his administrative review was closed.

On July 14, 2005, Scott filed these two lawsuits challenging the actions of the defendants. The defendants filed motions to dismiss and, on September 20, 2005, the court heard oral argument on whether the plaintiff should be given the opportunity to exhaust his administrative remedies. At oral argument, the parties acknowledged that, although the plaintiff complained to several agencies, an evidentiary hearing had not been conducted, nor had mandatory arbitration occurred. Consequently, the court ordered the ADRS to schedule an evidentiary hearing on this matter and directed the plaintiff to attend the hearing. *See* Doc. # 11.

A full evidentiary hearing pursuant to the Randolph-Sheppard Act was held on October 6, 2005. (Doc. # 18, Ex. A). At that hearing, plaintiff Calvin Scott, his wife Gladys Scott, defendants Ray Dennis, Ken Green, and Perry Hopper all testified. On October 13, 2005, the hearing officer filed his decision in which he concluded that the plaintiff had "failed to exhaust the administrative remedies . . . Since there was no administrative review, there was no decision for the Commissioner to review. As there was no commissioner's conference, there is nothing for me to review." (Doc. # 13 at 7-8). Consequently, the hearing officer determined that the plaintiff was entitled to no relief. (*Id.* at 8).

Dissatisfied with the hearing officer's decision, the plaintiff requested arbitration as is his right under the Randolph-Sheppard Act. An arbitration panel was convened and a hearing was held on May 23, 2007. On December 5, 2007, the arbitration panel decided that

the ADRS had not violated the Randolph-Sheppard Act.  (Doc. # 53, Ex. A at 1 & 16).  The arbitration panel concluded that the plaintiff was not entitled to the relief he sought[3] and that the proper respondent was the ADRS, not the individually named defendants.  The panel also found that the plaintiff had not been terminated as a licensed vendor; that the ADRS did not initiate the procedure to suspend or terminate the plaintiff's license; and that the plaintiff "unilaterally decided that he would not participate under [the conditions imposed by defendant Swearengin].  A refusal to participate by [the plaintiff] does not amount to a termination or suspension by the ADRS."  (*Id.* at 12).  The panel further found that, although the defendants notified the plaintiff that he would be removed from the facility, Scott was never actually removed because he and his wife were able to return to the facility.  Further, the panel concluded that Scott was never terminated or suspended as a licensed vendor.[4] (*Id.*).

In reviewing the arbitration panel's decision, the court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."  *Motor Vehicle Mfrs. Ass'n of the U. S.*, 463 U.S. at 43.  *See also*

---

[3]  The panel concluded that it was not empowered to resolve the plaintiff's state law or civil rights claims, nor could it impose criminal liability against the defendants.  (Doc. # 53, Ex. A at 9-10).

[4]  One panel member filed a concurring and dissenting opinion in which he "concur[red] with my fellow panel members in that a great deal of the claims asserted by Mr. Scott are not justiciable by this Panel.  However, with respect to whether the ADRS violated the Randolph-Sheppard Act, [he did] believe a minor infraction thereof occurred."  (Doc. # 53, Ex. A at 1 & 16).  The panel member's main concern was that ADRS failed to investigate and "advocate forcefully" for the plaintiff.  Even if the court were to find a violation of the Act, the remedy sought by the plaintiff, i.e. millions of dollars, is inappropriate because an arbitration panel does not have the authority to award money damages.  *See Ga. Dep't of Human Res. v. Nash*, 915 F.2d 1482 (11th Cir. 1990).  Moreover, the plaintiff did not sue ADRS and thus, an award of damages against it would not stand.

8

*Fla. Manufactured Housing Ass'n, Inc.,* 53 F.3d at 1572-73.

The court examines the arbitration panel's decision to determine if it offers "a rational connection between the facts found and the choice made," and whether the decision is a "product of reasoned decision making." *Motor Vehicle Mfrs. Ass'n of the United States*, 463 U.S. at 52.  The arbitration panel considered the testimony and documentary evidence presented at the hearing as well as the arguments of the parties in reaching its decision.  In a detailed opinion, the panel made findings of fact and applied the law to those findings.  The mere fact that the plaintiff disagrees with the panel's decision does not render it arbitrary and capricious.  Despite his rhetoric and colorful hyperbole that the defendants slandered, libeled and defamed him, to reverse the decision of the panel, Scott must present some evidence that the panel's decision was arbitrary, capricious or an abuse of discretion.  This he does not do. The panel has the discretion to make findings of fact as well as credibility findings based on the evidence presented during the hearing.

"The only right conveyed to a blind vendor under the Randolph-Sheppard Act is  . . . the procedural one entitling him an opportunity to convince a state licensing agency to take action."  *Ala. Dep't of Rehabilitative Servs. v. U.S. Dep't of Veterans Affairs,* 165 F. Supp. 2d 1262, 1267 (M.D. Ala. 2001).  The plaintiff received a full evidentiary hearing at the state level as well as before the arbitration panel.  Absent some indication that the arbitration panel's decision is flawed, irrational or not well-reasoned, the court must uphold the panel's determination.  Upon careful review of the arbitration panel's decision, the briefs, exhibits and other pleadings in this case, the court concludes that the decision of the arbitration panel

9

was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Kentucky,* 424 F.3d at1228; *Delaware Dept. of Health & Soc. Servs., Div. for Visually Impaired*, 772 F.2d at 1128.

## CONCLUSION

For the reasons as stated, it is the RECOMMENDATION of the Magistrate Judge that the decision of the Department of Education arbitration panel be AFFIRMED and that this case be DISMISSED with prejudice.  Having determined that the plaintiff's federal claims are due to be dismissed, it is further the RECOMMENDATION of the Magistrate Judge that the court DECLINE to exercise supplemental jurisdiction of the plaintiff's state law tort claims pursuant to 28 U.S.C. § 1367, and that these claims be DISMISSED without prejudice.  Finally, it is

ORDERED that the parties shall file any objections to the said Recommendation on or before **October 30, 2008.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein*

10

*v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 17th day of October, 2008.


      /s/Charles S. Coody               
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE